BIROU v THOMPSON-BROWN COMPANY

1. PRINCIPAL AND AGENT—EXISTENCE OF AGENCY—JURY QUESTIONS—
   WRITTEN AGREEMENTS.

   The existence of an agent-principal relationship is generally for
   the jury to decide if any evidence as to its existence is pre-
   sented at trial; however, where the relationship of the parties is
   defined by written agreement it is the province of the trial
   judge to determine the relationship.

2. PRINCIPAL AND AGENT—TEST—RIGHT TO CONTROL—WRITTEN
   AGREEMENT.

   The test of principal and agent is the right to control, and a trial
   court properly found an agency relationship where a written
   agreement between a subdivision developer and a sales agent-
   contractor retained for the developer the right to cancel the
   agreement under specified conditions, the right to approve any
   changes sought in deed restrictions, and the right to enforce
   certain express conditions as to builders and pricing arrange-
   ments.

3. PLEADING—NEW THEORY—PREJUDICE.

   A party may not inject a new theory into a case where the result
   would prejudice adverse parties.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 3 Am Jur 2d, Agency §§ 359, 360.
[3] 61 Am Jur 2d, Pleadings §§ 382–386.
[4] 30 Am Jur 2d, Evidence § 1086.
   75 Am Jur 2d, Trial § 489.
[5] 31 Am Jur 2d, Expert and Opinion Evidence §§ 24–32.
[6] 81 Am Jur 2d, Witnesses § 74.
[7] 31 Am Jur 2d, Expert and Opinion Evidence §§ 35, 44.
[8] 81 Am Jur 2d, Witnesses § 596.
[9] 29 Am Jur 2d, Evidence § 251 et seq.
[10] 41 Am Jur 2d, Indemnity §§ 19–27.
[11, 12] 3 Am Jur 2d, Agency § 243 et seq.
   41 Am Jur 2d, Indemnity § 22.
[12] 3 Am Jur 2d, Agency §§ 223, 338.
[13] 20 Am Jur 2d, Costs §§ 73–75, 78–82.
[14] 20 Am Jur 2d, Costs §§ 72–86.

4. MOTIONS—DIRECTED VERDICT—MEANING OF EVIDENCE.

A motion for a directed verdict is properly denied when, considering the facts in the light most favorable to the adverse party, reasonable men could differ as to the meaning of the evidence.

5. WITNESSES—OPINION TESTIMONY—QUALIFICATIONS OF WITNESSES—JUDGE'S DISCRETION.

The determination of the qualifications of a witness to give opinion testimony is within the discretion of the trial judge, and a plaintiff may be allowed to testify as to the value of his property.

6. WITNESSES—EVIDENCE—JUDGE'S DISCRETION—REBUTTAL TESTIMONY—PRETRIAL SUMMARY—MODIFICATION.

A trial court has the discretionary power to modify a pretrial summary and allow the parties to call witnesses who are not listed, and a court did not abuse this discretion in permitting a plaintiff to call a rebuttal witness where the court was satisfied that the plaintiff was acting in good faith and had not discovered the witness's existence until the trial.

7. WITNESSES—EXPERT WITNESSES—OPINION OF WITNESSES—ABSOLUTE CERTAINTY.

The opinion of an expert witness need not be stated in terms of absolute certainty to be admissible.

8. WITNESSES—FRAUD—THIRD PARTIES—SIMILAR REPRESENTATIONS—IMPEACHMENT.

Testimony of third parties as to representations made to them by a defendant, similar to those complained of by a plaintiff, may be admissible in an action for fraud if the representations were proximate in time, and may be used to impeach the credibility of participants in the transaction giving rise to the action.

9. EVIDENCE—RELEVANCE OF EVIDENCE—JUDGE'S DISCRETION—APPEAL AND ERROR.

The relevance of evidence is to be determined by the trial judge, whose exercise of discretion is to be affirmed unless an abuse of discretion is manifest.

10. INDEMNITY—TORTS—ACTIVE TORTFEASORS—PASSIVE TORTFEASORS—CAUSAL NEGLIGENCE.

A passive tortfeasor may seek indemnification because of the active tort of another; when one is compelled to pay damages another ought to pay, the former may recover the sum so paid

from the latter if the one making the payment is free from causal negligence.

11. INDEMNITY—PRINCIPAL AND AGENT—ACTIVE NEGLIGENCE—CAUSAL NEGLIGENCE.

A sales agent was properly held to be primarily liable upon a plaintiff's judgment against both the agent and the principal where the proofs established that the principal was free of active, causal negligence except as a principal responsible for the negligent misrepresentation of its agent to the plaintiff.

12. PRINCIPAL AND AGENT—INDEMNITY—EQUITY—UNJUST ENRICHMENT—CLEAN HANDS DOCTRINE.

There is no authority for the proposition that a defendant principal is unjustly enriched because the codefendant sales agent received only a small percentage of the proceeds of a sale to the plaintiff and must thereafter indemnify the principal for the entire amount of damages suffered by the plaintiff because of misrepresentations made by the agent; to give such relief to an active tortfeasor against a passive tortfeasor would be to violate the equitable maxim that he who comes into equity must come with clean hands.

13. COSTS—DAMAGES—ATTORNEYS' FEES—EXPRESS AUTHORIZATION.

Generally, courts will not allow recovery of attorneys' fees, either as an element of the costs of the suit or as an item of damages, unless allowance of a fee is expressly authorized by statute or court rule.

14. COSTS—DAMAGES—ATTORNEYS' FEES—PRIOR LITIGATIONS—PRESENT LITIGATIONS.

Reasonable attorneys' fees incurred in prior litigation with a third party may be recoverable in a subsequent proceeding where a present defendant has by his wrongful conduct caused a present plaintiff to defend or prosecute the previous legal proceedings; however, payment of attorneys' fees is not authorized where the expenses incurred are in defense of a present action.

Appeal from Oakland, Arthur E. Moore, J. Submitted November 4, 1975, at Detroit. (Docket Nos. 23689, 23777.) Decided February 26, 1976. Leave to appeal denied, 397 Mich —.

Complaint by Ronald F. Birou and Beverly J. Birou against Thompson-Brown Company and

Homestead Corporation for damages for negligent and reckless misrepresentation in the sale of a home and lot. Judgment for plaintiffs against both defendants, who cross-claimed for indemnity between the two defendants. The cross-claim of Homestead was granted, but the court denied a motion to include costs and attorneys' fees. Both defendants appeal, and the appeals were consolidated for hearing. Affirmed.

*Lampert & Fried* (by *David M. Fried* and *Gary E. Levitt),* for plaintiffs.

*Hibbs, Lewis & Berg, P. C.,* for defendant Thompson-Brown Company.

*Robert A. Jacobs,* for defendant Homestead Corporation.

Before: D. E. HOLBROOK, P. J., and J. H. GILLIS and M. J. Kelly, JJ.

M. J. KELLY, J. These are consolidated appeals of right from Oakland County Circuit Court. The cause was originally part of a class action but the instant case was severed for initial disposition and trial.

This case arose out of the purchase of a home and lot in the Meadowbrook Lake Subdivision in Novi. Plaintiffs alleged that defendant Thompson-Brown Company negligently and recklessly made false statements about the condition of Meadowbrook Lake while acting as agent for defendant Homestead Corporation, the subdivision developer. The representations were, *inter alia,* that Meadowbrook Lake which abutted plaintiffs' property was suitable for swimming, ranged in depth from 12 to 18 feet, had a sandy bottom, and was not polluted.

Plaintiffs offered evidence at trial to show that all these representations were false.

A jury found for the plaintiffs and against both defendants, and assessed plaintiffs' damages at $5,400. A separate hearing was held on cross-claims for indemnity between the two defendants. As a result of that hearing, the court dismissed the cross-claim of defendant Thompson-Brown and granted the cross-claim of defendant Homestead. Thereafter, the trial court denied Homestead's motion to reopen proofs so as to include costs and attorneys' fees within the indemnification order.

Both defendants have appealed, raising 12 issues having to do with the finding of liability and the award of damages, the award of indemnity and the denial of Homestead's motion regarding attorneys' fees.

## Liability and Damages

With regard to the original trial, defendants raise nine claims of error. The first of these is that the trial judge erred in instructing the jury, as a matter of law, that Thompson-Brown was acting as agent for Homestead in the sale of the property. Defendant Homestead alleges that the question of agency was one for the jury to determine.

It has been repeatedly held that the existence of an agent-principal relationship is generally for the jury to decide, if there is any evidence as to its existence presented at trial. *Ardash v Karp,* 18 Mich App 241, 244; 170 NW2d 854 (1969), *Head v Benjamin Rich Realty Co,* 55 Mich App 348, 357; 222 NW2d 237 (1974). However, where the relationship of the parties has been defined by written agreement, it is the province of the trial judge to determine the relationship. *Keiswetter v Ruben-*

*stein,* 235 Mich 36, 42; 209 NW 154 (1926). See also, *Ayer v Devlin,* 179 Mich 81, 88–89; 146 NW 257 (1914).

Here there was a written agreement between Thompson-Brown and the owners of the subdivision, Suburban Development Co., later Homestead. By this agreement, Thompson-Brown was to sell lots and contract with builders to build the homes, subject to various conditions set forth in the agreement. In return, Thompson-Brown was to receive $500 per lot.

Defendant Homestead argues that Thompson-Brown was an agent for Nosan Building Company, not a party to this suit, which built plaintiffs' home. Further, Homestead argues, Thompson-Brown was an independent contractor vis-a-vis Homestead, because plaintiffs' purchase agreement did not include Homestead as a party.

We disagree. The test of principal and agent is the right to control. *Van Pelt v Paull,* 6 Mich App 618, 624; 150 NW2d 185 (1967). The agreement between Thompson-Brown and Homestead spelled out the relationship between the parties in great detail. Homestead retained the right to cancel the agreement under specified conditions, the right to approve any changes in deed restrictions sought by Thompson-Brown, and the right to enforce certain express conditions as to builders and pricing arrangements. The written agreement clearly contemplated a sales agency and we hold that the trial judge was correct in so instructing the jury.

Defendant Homestead next argues that the trial judge erred in allowing the jury to consider a different theory of the case from that alleged by the plaintiffs, thus working a hardship upon defendant Homestead. The trial judge instructed the jury on a theory of negligent misrepresentation.

These instructions, Homestead alleges, were a surprise and deprived it of the opportunity to raise the defense of contributory negligence or to bring in third parties.

It is true that a party may not inject a new theory into a case where the result would prejudice adverse parties. *Fred Gibbs, Inc v Old Colony Insurance Co,* 30 Mich App 352, 356; 186 NW2d 396 (1971). This is clearly not such a situation. The transcript is replete with arguments by defense counsel not only recognizing the issue of negligent misrepresentation, but asserting to the trial court that that was the sole issue framed by plaintiffs' complaint. In fact, the attorneys for defendant Thompson-Brown were vitally interested in narrowing the claim to one of negligent misrepresentation because liability insurance coverage hinged on that finding. The attorneys expressed this openly to the court below and it had been the subject of pretrial motions. We find the raising of this issue on appeal improper.

The theory of negligent misrepresentation was set forth in paragraphs 10 and 11 of plaintiffs' second amended complaint:

"10. That at the time said unqualified and positive advertisements, statements and representations were made to the plaintiffs herein, they were untrue and were made negligently and recklessly in that the defendant, Homestead Corporation, and the defendant, Thompson-Brown Company, failed to determine the truth of said representations at the time they were made to the plaintiffs.

"11. That as a result of the negligent representations made to the plaintiffs by the defendants, the plaintiffs, in reliance thereon, entered into contracts for the purchase of lots in Meadowbrook Lake Subdivision and caused a dwelling to be built on each of the lots purchased. As a result of such purchase, each of the

plaintiffs have been damaged in the sum of Fifteen Thousand ($15,000) Dollars."

Certainly this language informed defendants that plaintiffs were basing their cause of action, in part, on a theory of negligent misrepresentation. Further, defense counsel did not challenge the theory of negligent representation until the end of trial. In fact, during the trial, the defense consistently attempted to limit testimony to that theory. There was no surprise or hardship, and we find that the judge committed no error in this regard.

Defendant Homestead next contends that the trial judge erred in denying its motion for a directed verdict, and motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Homestead argues that the motions should have been granted because there was no evidence of Homestead's participation in misrepresentations, and no evidence of an agency relationship with Thompson-Brown Company. We have already addressed the agency question.

When a trial court's refusal to grant a motion for directed verdict or judgment notwithstanding the verdict is reviewed, the facts are considered in the light most favorable to the adverse party. If reasonable men could differ as to the meaning of the evidence, then a directed verdict should be denied. *Holliday v National Dairy Products Corp,* 50 Mich App 366, 370; 213 NW2d 289 (1973). The testimony of the witnesses, if believed, showed misrepresentations by the agent made within the scope of his agency. *Chanler v Venetian Properties Corp,* 254 Mich 468, 472; 236 NW 838 (1931), *Sullivan v Ulrich,* 326 Mich 218; 40 NW2d 126 (1949). The trial judge did not err in denying the motions.

The next six assigned errors have to do with the

admission of evidence and conduct of the trial. We find no error.

1) The determination of the qualifications of a witness to give opinion testimony is within the discretion of the trial judge. *Auto-Ion Chemicals Inc v Gates Rubber Co,* 33 Mich App 574, 577; 190 NW2d 357 (1971). The trial court did not abuse its discretion in allowing plaintiff Ronald Birou to testify as to the difference in value of his property located on a swimmable lake, as contrasted with a non-swimmable lake.

2) The trial court did not abuse its discretion in permitting plaintiffs to call a rebuttal witness in view of a prior protective order regarding expert witnesses. The trial court has the discretionary power to modify a pretrial summary and allow the parties to call witnesses who are not listed. *Jamison v Lloyd,* 51 Mich App 570, 573; 215 NW2d 763 (1974). In this case plaintiff called as a rebuttal witness William Coleman of the State Highway Department to testify regarding the depth of the lake. The trial court was satisfied that plaintiff was acting in good faith and had not discovered Coleman's existence until trial.

3) It is not necessary for an expert witness to state an opinion in terms of absolute certainty for it to be admissible. See *Knoper v Burton,* 12 Mich App 644, 650; 163 NW2d 453 (1968), *reversed on other grounds,* 383 Mich 62; 173 NW2d 202 (1970), *Bilicki v W T Grant Co,* 382 Mich 319; 170 NW2d 30 (1969). Therefore the trial court did not err in allowing an expert witness to testify that he would not swim in the lake as it existed in 1968, even though he stated there were extenuating circumstances which made it difficult to give a "scientific opinion".

4) It is urged that reversible error was commit-

ted when plaintiffs' counsel responded to an inquiry by the court:

"Yes, your Honor. The purpose of this testimony is to show the intent to defraud upon the part of Thompson-Brown by showing similar representations made to the other people."

Defendant Thompson-Brown also urges that the court erred in failing to grant a mistrial on this issue. Defendant fails to inform this Appellate Court that counsel did not, in fact, make a motion for a mistrial following this exchange. It is a misleading claim of error.

Further, as to this issue, the defendants have diametrically opposite views. Defendant Homestead Corporation urges upon this Court that the plaintiffs' claim was solely a fraud and deceit claim:

"During the course of this trial in this cause, Homestead Corporation, in reliance upon the pleadings and the plaintiffs' theory, tried this cause as a fraud and deceit case." [Brief of defendant-appellant Homestead, p 35].

Defendant Thompson-Brown says:

"Plaintiffs abandoned any claim of intentional fraud and defendants were prepared to defend against a claim of negligent or reckless misrepresentation." [Defendant Thompson-Brown's brief, p 18].

Both appellate counsel who subscribed their names to the respective briefs were in attendance at the trial. We are not amused. Defendants apparently take a diversionary tack with this Appellate Court rather than conscientiously attempting to define and litigate justiciable issues. This tactic was suc-

cessful at trial and the witness was prevented from giving the testimony that was offered. The court's ruling was this:

"I do not think it is material to this case, and I will so instruct the jury. His testimony at this point has not been material. It would be cumulative at best. I do not think you are correct in that regard, at least so far. You may reserve the rights [sic] to produce his testimony later. I will so instruct the jury. Anything else?"

The curative instruction was as follows:

"Ladies and gentlemen of the jury, I think when we adjourned we had heard a minimum of testimony by Mr. Carl Traynor. He will not be on the stand at this point. What he has said up to this point is not material. Disregard it. He may be able to testify later, depending on other circumstances. That is not before you and so I merely tell you to disregard anything that he said at this point."

We think the assertion of error by the defendants in this regard is improper.

5) In fraud actions the testimony of third parties as to similar representations made to them by a defendant may be admissible if proximate in time. *Stowe v Mather,* 247 Mich 329, 331–332; 225 NW 504 (1929), *Jordan v Miller,* 232 Mich 8, 9; 204 NW 708 (1925). Evidence of such representations may also be used to impeach the credibility of participants in the transaction. *Baloyan v Furniture Exhibition Building Co,* 258 Mich 244, 249; 241 NW 886 (1932). This case was tried, in part, on a fraud theory. Therefore the trial judge did not err in permitting testimony regarding the conduct of defendant Thompson-Brown after sale to the plaintiffs. This testimony was relevant to show knowledge or recklessness, and for purposes of impeach-

ing the credibility of the Thompson-Brown sales manager.

6) At trial certain records of the Department of Natural Resources, to-wit, a study of the area which found significant pollution, were admitted into evidence over objection that they were irrelevant to the representation at issue, since the records reflected conditions in 1966, and not 1968 when the plaintiffs purchased their lot. The relevance of evidence is to be determined by the trial judge, whose exercise of discretion is to be affirmed unless an abuse of discretion is manifest. *Kujawski v Cohen,* 56 Mich App 533, 540; 224 NW2d 908 (1974). The evidence of the earlier pollution investigation was relevant as bearing on defendant's possible recklessness or negligence in representing the lake as not polluted.

In addition, the records were not inadmissible hearsay, as defendants contend, but rather admissible under the business records exception to the hearsay rule. MCLA 600.2146; MSA 27A.2146. *Birkner v Purdon,* 27 Mich App 476, 480; 183 NW2d 598 (1970).

## Indemnity

Defendant Thompson-Brown next alleges that the trial judge erred in ruling in favor of defendant Homestead on the cross-claim for indemnity as being merely a passive joint tort-feasor. We affirm.

Michigan law recognizes that indemnity may be proper upon a theory that a party may be a passive tort-feasor and may accordingly seek relief because of the active tort of another party. *Dale v Whiteman,* 388 Mich 698, 705; 202 NW2d 797 (1972). The principle rests upon the theory that when one is compelled to pay damages another

ought to pay, the former may recover the sum so paid from the latter if the one making the payment is free from causal negligence. *McLouth Steel Corp v A E Anderson Construction Corp,* 48 Mich App 424, 430; 210 NW2d 448 (1973).

In this case the trial judge held that Thompson-Brown was primarily liable upon the plaintiffs' judgment, since it was the active tort-feasor. He reasoned that the jury verdict could only have been reached against the defendant, Homestead Corporation, because of the actions of its agent. The proofs had established that Homestead was completely free of active, causal negligence, except as a principal responsible for the negligent misrepresentation of its sales agent. On appeal, Thompson-Brown has challenged this conclusion, claiming that the jury could have reached its verdict by finding that Homestead was negligent in relying upon the August, 1966 letter from the health department, which it delivered to Thompson-Brown pursuant to the contract, or that Homestead also had a continuing duty to investigate water quality. On review of the record, we find that the judge's instructions precluded any such theory of liability. The judge's finding of indemnity was consistent with the jury's verdict.

We also reject Thompson-Brown's argument that Homestead has been unjustly enriched because Thompson-Brown received only 5.55% of the proceeds of the sale of the lot and now must indemnify Homestead for all the damages suffered by the plaintiffs. We have found no authority for such a proposition and note that, to give such relief to an active tort-feasor against a passive tort-feasor, would be to violate the equitable maxim that he who comes into equity must come with clean hands. McClintock, Equity (2d ed), § 24, p 52.

## ATTORNEYS' FEES

The final two assignments of error are closely related. Defendant Homestead contends that 1) the trial court erred in refusing to permit defendant Homestead to take additional proofs as to the issue of attorney's fees in its claim for indemnity, and 2) a party found vicariously liable for the tort of another is entitled to reasonable attorney fees where it has been required to defend a suit and prosecute an appeal because of the wrongful conduct of the other party.

In support of its contention, defendant Homestead cites the case of *State Farm Mutual Automobile Insurance Co v Allen,* 50 Mich App 71; 212 NW2d 821 (1973), which gives the history and development of the case law relative to the award of attorney fees. The general rule is that courts will not allow recovery of attorneys' fees, either as an element of the costs of the suit or as an item of damages, unless allowance of a fee is expressly authorized by statute or court rule. *State Farm v Allen, supra,* p 74. The opinion then goes on to cite several exceptions to this rule, among them "reasonable attorneys' fees incurred in prior litigation with 'a third party—not with the defendant' ", *State Farm v Allen, supra* at 78. The court then quotes McCormick, Damages, § 66, p 246:

"For the expense incurred in the *present* litigation, we have found that our law generally gives the successful party no recompense beyond the taxable costs which ordinarily include only a portion of his expense. This is the case, however wrongful the suit or groundless the defense. On the other hand, where the present defendant has by his wrongful conduct, be it tort or breach of contract, caused the present plaintiff to defend or prosecute *previous* legal proceedings, the law reverses its restrictive attitude and allows the plaintiff to recover

all the expense, including counsel fees, reasonably incurred by him in the prior litigation." *State Farm v Allen, supra* at 78–79. (Emphasis in original.)

We agree with defendant Homestead that *State Farm v Allen, supra,* sets forth the applicable law. However, we hold that Homestead is not entitled to recover attorney fees under this test because the expenses incurred by Homestead were incurred in defense of the *present* action. The trial judge committed no error in refusing to hear proofs regarding Homestead's legal expenses in defending this action.

Judgment affirmed. Costs of this appeal awarded to appellees against both defendants.