## THOMPSON v PETERS

1. DEATH—WRONGFUL DEATH—DAMAGES—GUEST PASSENGER STAT-
UTE—GROSS NEGLIGENCE.

   Plaintiff, in order to recover damages under the wrongful death
   act, had to demonstrate that defendant was guilty of gross
   negligence where both parties admitted that plaintiff was a
   guest passenger in defendant's automobile (MCLA 257.401,
   600.2922).

2. AUTOMOBILES—GUEST PASSENGER STATUTE—EVIDENCE—ORDINARY
NEGLIGENCE—DAMAGES.

   The Michigan guest passenger statute provides that evidence
   of ordinary negligence is not sufficient to allow recovery for
   damages if plaintiff is a guest of defendant (MCLA 257.401).

3. APPEAL AND ERROR—DEATH—WRONGFUL DEATH—REMARRIAGE—
DAMAGES.

   Denial of plaintiff's request for a protective order in a wrong-
   ful death action, seeking to exclude testimony and facts per-
   taining to her remarriage from the jury, if it was error,
   would not have changed the result of the jury's finding for
   defendant as, from the fact that the jury requested additional
   instructions on gross negligence and later returned a verdict
   for defendant, it can be assumed that the issue of damages
   was never considered and the concern of courts is that evidence
   of remarriage would tend to reduce the amount of damages
   awarded to the plaintiff; here the jury never reached the
   issue of damages.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 486–489.
   Automobiles: liability of owner or operator for injury to guest.
   20 ALR 1014; 26 ALR 1425; 40 ALR 1338; 47 ALR 327; 51 ALR
   581; 61 ALR 1252; 65 ALR 952, supplementary.
[3] 22 Am Jur 2d, Death § 164.
   Remarriage of surviving spouse, or possibility thereof, as affect-
   ing action for wrongful death of deceased spouse.   87 ALR2d
   252.

Appeal from Court of Appeals, Division 3, Holbrook, P. J., and Bronson and Munro, JJ., reversing and remanding Calhoun, Creighton R. Coleman, J. Submitted September 14, 1971. (No. 37 June Term 1971, Docket No. 53,077.) Decided February 25, 1972.

26 Mich App 590 reversed.

Complaint by Sharon Thompson, administratrix of the estate of Harold Jack Thompson, deceased, against Charles W. Peters, administrator of the estate of William J. Collins, deceased, for damages for wrongful death caused by an automobile accident. Judgment for defendant. Plaintiff appealed to the Court of Appeals. Reversed and remanded. Defendant appeals. Reversed.

*Allen, Worth, Hatch & Calderone,* for plaintiff.

*James, Dark & Craig,* for defendant.

SWAINSON, J. This action arises out of an automobile accident which occurred on March 17, 1967, in Calhoun County, wherein plaintiff's decedent, as a guest passenger, was instantly killed. Defendant's decedent was likewise killed instantly in the same accident. The action was brought under the wrongful death act,[1] and tried before a jury which returned a verdict, by a vote of ten to two, of no cause of action.

Subsequent to the commencement of suit but prior to trial, plaintiff widow remarried. On October 16, 1968, approximately two months before trial, plaintiff filed "Motion for Protective Order," seeking to exclude testimony and facts pertaining to her re-

---

[1] MCLA 600.2922; MSA 27A.2922.

marriage from the jury. The court denied the motion on December 2, 1968, and trial occurred on December 12 and 13, 1968.

Plaintiff based her appeal to the Court of Appeals on the denial of her Motion for Protective Order. The Court of Appeals reversed the jury verdict and remanded to the lower court for a new trial,[2] holding that the disclosure of plaintiff widow's remarriage and presentation of evidence in relation to the remarriage had an adverse effect upon the jury in their consideration of the question of liability and consequent damages; that the fact of plaintiff's remarriage should not have been placed before the jury in that it was not relevant to the wrongful death action. Defendant applied to this Court for leave to appeal. We granted such leave. 384 Mich 791.

## I.

Plaintiff, in order to recover for damages, had to demonstrate to the jury that defendant was guilty of gross negligence. This is because the Michigan guest passenger statute[3] provides that evidence of ordinary negligence is not sufficient to allow recovery for damages if plaintiff is a guest of defendant. It is admitted by both parties that plaintiff was a guest in this situation.

The facts brought out at the trial showed that plaintiff's decedent (hereinafter referred to as plaintiff) was being driven by defendant's decedent (hereinafter referred to as defendant) from Marshall to Tekonsha, Michigan. They stopped at Ben's Bar and defendant had one and one-half beers in either one hour or two hours. Plaintiff, according to witness L. G. Rogers, a bar patron, complained

[2] *Thompson* v *Peters,* 26 Mich App 590 (1970).
[3] MCLA 257.401; MSA 9.2101.

of defendant's manner of driving from Marshall to Tekonsha. Plaintiff allegedly told witness Rogers that he and defendant had installed a new 396-engine in defendant's car, which purportedly is a very large engine for the type of car defendant was driving. Defendant's wife testified that the engine had been installed several months earlier.

Witness Charles Katz, another bar patron, testified that defendant took off at a high rate of speed on US–27 toward Marshall.

It appears that defendant was proceeding north on US–27 and attempted to pass a pickup truck in front of him. He pulled out and saw another vehicle coming south and attempted to accelerate to pass the pickup truck. His car hit a wet spot, veered off the road and skidded into a tree, killing both occupants of the car instantly. One witness to the accident, Wallace Warren, estimated plaintiff's speed at 90 miles per hour, but his testimony on other aspects of the accident was inconsistent with all of the other witnesses in several respects. Witness Rogers, a friend of plaintiff's, and plaintiff's wife both testified that the tread on three of the tires on defendant's car was bald. Defendant's wife disputed this.

The trial judge appears to have entertained doubt that plaintiff had proved a *prima facie* case of gross negligence by a preponderance of the evidence. Defendant made a motion for directed verdict, and the trial judge reserved ruling thereon but did not deny the motion. He indicated that he felt no harm would be done if he let the case go to the jury, but that if he directed a verdict and was later reversed, a whole new trial would be required. The trial judge felt that this case was very similar to *Brooks v Haack*, 374 Mich 261 (1965), where our Court reversed a jury verdict and a judgment for plain-

tiff and held there was no gross negligence as a matter of law.[4]

## II.

Although the Court of Appeals stated in its opinion (p 601):

"We cannot say that disclosure of the fact of remarriage and presentation of evidence relative to the remarriage did not have an adverse effect upon the jury in its consideration of the question of *liability and consequent damages,*" (emphasis added)

nevertheless the concern of courts in denying the jury knowledge of plaintiff's remarriage involves the concern as to whether or not the jury may reduce the damages and not whether they may be prejudiced as to the question of liability.

Plaintiff, in his brief, cites 11 Am Jur Trials, Representation of Survivors, § 45, p 65, which reads:

"Thus, the remarriage will undoubtedly have an effect on the jury in *awarding damages* \* \* \* ." (Emphasis added.)

*Helmick v Netzley,* 12 Ohio Misc 97, 98; 229 NE2d 476 (1967), cited by the Court of Appeals, states:

"The foregoing ruling number 1 is to prevent *possible diminution of damages as a result of the marriage* and the court observes that such a dis-

---

[4] The trial judge stated:

"There were skid marks here, and which I believe, in 374 Michigan 261, the Court found there were none. Of course, that case just cited, was at night and this was daytime. And I presume that visibility was not as good at night as it is in the daytime. To me, in essence, the main difference between that case and this case is whether or not there is evidence here of the state of mind he was driving in. *And that is mighty thin.*" (Emphasis added.)

closure would in all common probability accomplish just that." (Emphasis added.)

In *Wiesel* v *Cicerone,* 106 RI 595; 261 A2d 889, 891 (1970), the Court stated:

"The overwhelming weight of authority in this country, with which we agree, is that evidence of the remarriage of a surviving spouse or the possibility thereof *should not be considered in arriving at the amount of damages* in a wrongful death action." (Emphasis added.)

In *Bunda* v *Hardwick,* 376 Mich 640 (1965), which the Court of Appeals also relied on, our Court stated in the circumstances of that case (p 656):

" * * * evidence of plaintiff's remarriage or the probability of her remarriage is irrelevant and, therefore, was properly excluded, *in determining the damages* she suffered upon the death of her spouse." (Emphasis added.)

Thus, all the cases indicate that the Courts were concerned that a jury might diminish *the amount of the damages* which a plaintiff would recover, and were not concerned with the possibility that the jury would not find liability because of the fact of a plaintiff's remarriage.

## III.

In *Knoper* v *Burton,* 383 Mich 62 (1970), plaintiff had filed suit for damages arising out of an accident that occurred when he was hit by an automobile while crossing a street with two fellow workers. The Court of Appeals had reversed and remanded a verdict and judgment for the defendant on the ground that the trial court improperly excluded certain expert medical testimony offered by the plaintiff. The Court unanimously held that the

exclusion of the expert medical testimony only went to the question of damages and that it did not constitute reversible error where the jury returned a verdict of no cause of action. Chief Justice KAVANAGH, speaking for the Court, stated (pp 67–68):

"The only permissible inferences than [*sic*] can be drawn from the jury's verdict and from a review of the entire record in this case are that they either found no negligence on defendant's part or that plaintiff was guilty of contributory negligence. To reach their verdict, the jury must have found against plaintiff in either respect on the essential facts. *Zook* v. *Theisen-Clemens Co.* (1935), 273 Mich 536.

"We conclude that the errors complained of were not prejudicial in that the excluded testimony, if received, would not have changed the result. *Horowitz* v. *Blay* (1916), 193 Mich 493. We hold that where it appears from the evidence disclosed by the record that the errors could not have affected the result, this Court will not reverse. GCR 1963, 529.1; *McGuire* v. *Rabaut* (1958), 354 Mich 230; *Fowles* v. *Rupert* (1906), 143 Mich 246; *Manning* v. *Bresnahan* (1886), 63 Mich 584."

The instant case presents the identical situation as that faced in *Knoper*. The concern of the authorities cited by plaintiff and relied on by the Court of Appeals, is that evidence of remarriage would tend to reduce the amount of damages awarded to the plaintiff. Here it may be concluded that the jury never reached the issue of damages.

Approximately one hour after the jury began deliberations, they returned to the courtroom and requested further instructions as to what constituted gross negligence. Thus, the jury was concerned about whether plaintiff had proved defendant was liable under the standard required by our guest

passenger statute. From the fact that the jury requested additional instructions and later returned a verdict for defendant we can assume that the issue of damages was never considered. We conclude, as in *Knoper,* that the error complained of, if it was error, would not have changed the result of the jury's finding as to liability.

The judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed. Costs to defendant.

T. M. KAVANAGH, C. J., and ADAMS, T. E. BRENNAN, T. G. KAVANAGH, and WILLIAMS, JJ., concurred with SWAINSON, J.

BLACK, J., concurred in the result.